## FRANKSON v. LAURES.

(Circuit Court of Appeals, Eighth Circuit. December 23, 1922.)

No. 5877.

1. Evidence ⊙⟹113(21)—Evidence held material as bearing on value for agricultural purposes of land traded.

In action for damages for false representations as to character and value of land traded by defendant to plaintiff, evidence that about two years before the trial alfalfa was selling as high as $70 per ton, but at the time of the trial was down to $20, *held* material as bearing on the value of the land for agricultural purposes.

2. Witnesses ⊙⟹248(2)—Answer held responsive to question as to amount in value that could be raised on crop of alfalfa.

In an action for damages from false representations in a land trade, testimony that about two years before the trial alfalfa was selling as high as $70 per ton, but at the time of the trial was down to $20, and that the land in question would make from a ton to a ton and a quarter at a cutting, was responsive to the question how much in value could be raised on a crop of alfalfa on such land, and was only rendered unresponsive by striking out the portion relating to the value of alfalfa.

3. Evidence ⊙⟹113(21)—Evidence of value of crop held material on question of value of land.

In an action for damages from false representations as to the character and value of land traded by defendant to plaintiff in April, 1918, evidence as to the market value of alfalfa in 1918 was material, as the value of land was one of the principal issues, and its value would depend on the character, amount, and value of crops which could be raised.

4. Evidence ⊙⟹117—Exclusion of evidence of value of alfalfa erroneous, where witness testified alfalfa was raised.

In action for damages from false representations on trade of land, it was error to exclude testimony as to the market value of alfalfa in 1918, on the ground that there was no showing that any alfalfa was raised in 1918 or any other year, where a witness had testified directly that alfalfa was raised in 1917 and 1918.

5. Evidence ⊙⟹113(21)—Evidence of market value of crop on land traded held admissible.

In action for damages from false representations as to condition and value of land traded by defendant to plaintiff in April, 1918, evidence as to the market value of alfalfa on the land in the fall of 1918, bore directly on the value in dispute and was admissible.

In Error to the District Court of the United States for the Northern District of Iowa.

Action by Theodore Laures against Thomas Frankson. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Charles N. Dohs, of St. Paul, Minn. (George B. Edgerton, of St. Paul, Minn., and Glenn Brown, of Dubuque, Iowa, on the brief), for plaintiff in error.

F. A. O'Connor, of Dubuque, Iowa (W. A. Smith, of Dubuque, Iowa, and M. F. Condon, of New Hampton, Iowa, on the brief), for defendant in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

STONE, Circuit Judge. Suit for damages because of false representations inducing an exchange of land. The plaintiff traded 160 acres of land in South Dakota and a city lot in St. Paul for 160 acres of land in Kansas.

The petition as amended sets out the false representations as to the Kansas land as being: That said land was in the oil and gas district; that it was underlaid with gas and oil; that there was thereon a paying gas well which had caved in, but could be fixed; that wherever gas is found, there is also oil; that the land could be leased under the "usual oil contract" for $3 per acre until developed and then a royalty of one-eighth; that defendant would lease this land and drill thereon "as soon as they could get at it"; that it was worth more than $125 per acre; that the drilling lease, subsequently made, was without any intention of defendant to carry it out and drill on the land. The answer, after denials and after alleging that the contract also included certain notes by plaintiff, counterclaimed on ground of false representations by plaintiff as to the South Dakota land. Those representations were: That the land was one mile from Esmond; that it was free from foul grass and stones; that there was a nice patch of alfalfa thereon; that it was worth $65 per acre ($10,400). The reply admitted the contract as alleged and denied any representations as to the value of the South Dakota land or as to it being free from foul grass and stones.

From a judgment on a verdict for plaintiff for $7,900 defendant sues this writ of error. Many assignments of error are here presented. They may be generally classified as follows: First, insufficient evidence to sustain the verdict; second, errors in admission and in exclusion of evidence; third, errors in the charge as given and in refusal of requests to charge; fourth, misconduct of counsel in argument.

The members of the court are not in entire agreement as to several of the many errors here urged; therefore we will discuss only such, upon all of which we are agreed, as are necessary to determine this writ of error. The evidence has been carefully examined and is found sufficient to sustain a verdict.

Assignments 17, 18 and 19 relate to rejection of testimony of a witness, Brown, concerning the value of the Kansas land for alfalfa raising. As an element of his defense, plaintiff in error was endeavoring to establish the value of this land for agricultural purposes. Brown had testified that he had known this land for 18 years; had been all over it several times and was entirely familiar with its character as farm land. On direct examination, the witness had testified as to the character of this soil and, as to alfalfa said:

"I think any part of the Callahan land [this land] would grow alfalfa. Alfalfa is considered one of the best crops they have in Kansas. They get four or five cuttings a year."

Then the following took place:

"Q. How much an acre in value can they raise on a crop of alfalfa on this Callahan land? A. That depends on the price of alfalfa. About two years ago alfalfa was selling high. We got as high as $40 a ton, but now it is down to $20, and that land will make from a ton to a ton and a quarter at a cutting.

"Mr. O'Connor: I move to strike out all of that answer, except where he says: 'That land will make from a ton to a ton and a quarter at a cutting'

—as incompetent, irrelevant and immaterial and not responsive, except to the portion I have stated.

"The Court: The objection will be sustained, and the answer will be stricken out.

"Mr. Brown: Note an exception.

"The Callahan land will raise from four to five tons of alfalfa per acre per year. *There was alfalfa raised on the Callahan land in 1917 and 1918.* I collected the rent for Mr. Laures, after he bought it, and observed the crops as they have been grown on that land from year to year. Know what it is good for.

"Q. How much alfalfa per acre can be raised on that land? A. Four or five tons.

"Q. What was the market value of alfalfa in 1918?

"Mr. O'Connor: Objected to as incompetent, irrelevant and immaterial, no showing that any alfalfa was raised on this farm in 1918, 1917, or any other years, purely speculative.

"The Court: Objection sustained.

"Mr. Dohs: Save an exception.

"Q. What was the market value of alfalfa on the Callahan farm in the fall of 1918?

"Mr. O'Connor: Objected to as incompetent, irrelevant and immaterial.

"The Court: The objection is sustained.

"Mr. Brown: Save an exception."

These three rulings constitute the errors in assignments 17, 18, and 19.

[1, 2] The motion to strike out the first answer was based on the dual grounds of immateriality and unresponsiveness. The materiality was clear as it had a direct bearing upon the value of the land for agricultural purposes. The answer was directly and clearly responsive to the question. It was not until after and because of the objection and the ruling sustaining it that the unresponsiveness appeared. The question called for production expressed "in value." The part of the answer not stricken out related solely to production expressed in amount of tonnage.

[3, 4] The second sustained objection was based upon immateriality and lack of sufficient foundation, in that there was no showing that any alfalfa had been raised on the land during the years 1917 and 1918. The trade of these lands occurred in April, 1918. The value of the lands was the crux of the controversy. The value of the Kansas land for agricultural, or other, purposes was one of the principal issues. Agricultural value would depend upon the character, amount and value of the crops which could be raised thereon. Therefore the materiality of this evidence would seem most obvious. The claim that there was "no showing that any alfalfa was raised on this farm in 1918, 1917, or any other years, purely speculative" is completely answered by the statement, just before, of the witness that:

"There was alfalfa raised on the Callahan land in 1917 and 1918. I collected the rent for Mr. Laures, after he bought it, and observed the crops as they have been grown on that land from year to year."

[5] The last objection was to the materiality of showing the market value of alfalfa on the Callahan farm in the fall of 1918. This bore directly upon the value in dispute and was plainly admissible. These three assignments of error are well taken.

Among the other assignments of error are some which apparently have merit, but which will doubtless be avoided in the retrial of the case. Because of the errors determined in the above opinion the judgment is reversed and the case remanded for a new trial.